Filed 3/4/14  Legendary Pictures Productions v. Lin Pictures CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LEGENDARY PICTURES PRODUCTIONS, LLC et al., | B248939 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC498786) |
| v. | |
| LIN PICTURES, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Abraham Khan, Judge.  Affirmed.

Kinsella Weitzman Iser Kump & Aldisert, Dale F. Kinsella, Gregory P. Korn; Venable, Douglas C. Emhoff and Jennifer Levin for Plaintiffs and Appellants.

Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor, Stanton L. Stein, Bennett A. Bigman, and Jordan S. Paul for Defendants and Respondents.

_____

Plaintiffs and appellants Legendary Pictures Productions, LLC (Legendary) and Jon Jashni (Jashni) brought an action for declaratory relief against defendants and respondents Lin Pictures, Inc., Vertigo Entertainment, Inc. (Vertigo), Dan Lin (Lin), Roy Lee (Lee), and Doug Davison, and submitted a demand for arbitration. Respondents filed a cross-complaint and denied that their dispute was subject to arbitration. Appellants filed a motion to compel arbitration; the trial court denied their motion; and appellants challenge that trial court order. Substantial evidence supports the trial court's finding that the parties never had a written agreement to arbitrate their dispute. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Parties Negotiate and Reach an Oral Agreement to Produce the Film*

The parties are self-described successful and experienced motion picture producers. Legendary acquired the rights to produce the film *Godzilla*, which is now in production and intended for release in 2014. After Legendary acquired the rights to the film, it began negotiating an agreement with respondents under which they would develop and potentially produce the film with Legendary.[1] Between September 2009 and late February 2010, the parties' counsel engaged in negotiations concerning a producer agreement. During their negotiations, the parties and their counsel never discussed or agreed to arbitrate their dispute.

The parties appear to agree that by February 26, 2010, they had reached an oral agreement pursuant to which they would develop and produce the film. And, the parties began working on the film. In March 2010, Jashni instructed respondents to begin working with the writer that they had selected to prepare the story and screenplay. On

---

[1]     Prior to *Godzilla*, Legendary and Vertigo had one dealing. According to Legendary, they had developed a feature film project, and a written agreement had been negotiated between Legendary and Vertigo concerning that film project. That agreement contained an arbitration provision. Vertigo tells a different story. Through counsel, Legendary and Vertigo negotiated the terms of another film project, and a draft agreement was prepared. The project was abandoned by Legendary before the agreement was finalized and signed.

2

March 29, 2010, Legendary issued a press release announcing that respondents were producers of *Godzilla*.

Lee and Lin began working with the writer and Legendary creative executives in developing the story, characters, and screenplay for Godzilla. Lin provided his producer services "in reliance on the oral agreement reached in late February 2010."

Legendary never told respondents to refrain from working until a written agreement was signed or that agreement to arbitration was a condition of their engagement. Legendary also never advised respondents that continuing their producer services would be considered assent to arbitration.

*Legendary's Draft Long-Form Agreement*

In March 2011, Legendary sent a draft of a long-form written contract to respondents and their counsel. The cover letter indicates that the draft agreement "includes negotiated language based on Vertigo's . . . and Legendary precedent." In addition to other terms not discussed during the negotiations leading up to the 2010 oral agreement, the draft agreement contained an arbitration provision.

The draft agreement expressly provided that Legendary's "obligations [thereunder were] subject to the full execution of this Agreement." In other words, Legendary had no obligations under the draft written agreement until it was signed.

*Respondents' Comments to the Draft Long-Form Agreement*

Respondents did not comment on the draft long-form agreement for quite a while. Legendary did not follow up until March 8, 2012, when one of its attorneys sent a follow-up e-mail asking for comments to the draft.

In October 2012, Lin's counsel proposed revisions to the draft long-form agreement, expressly reserving the right to make further changes. Other than a slight modification to the attorney fee provision, respondents did not object to the arbitration provision.

*Dispute Between the Parties*

A dispute arose between the parties in late 2012 and, by written correspondence on January 4, 2013, Legendary notified respondents that it would not be exercising its right to engage them as producers of the film.

*Legendary's Complaint and Respondents' Cross-Complaint*

On January 9, 2013, Legendary filed a complaint for declaratory relief and submitted a demand for arbitration with JAMS (Judicial Arbitration and Mediation Services). On January 17, 2013, respondents filed a cross-complaint, notified JAMS that the parties' disputes were not subject to arbitration, and objected to any further proceedings before JAMS. JAMS issued a stay of proceedings pending the trial court's determination of arbitrability.

*Legendary's Motion to Compel Arbitration; Appeal*

On March 8, 2013, appellants filed a motion to compel arbitration and stay the underlying superior court action. Respondents opposed appellants' motion.

After entertaining oral argument, the trial court denied appellants' motion, finding "that opposing parties never impliedly or otherwise consented to the written arbitration provisions, based upon the substantial evidence filed in opposition."

Appellants' timely appeal ensued.

## DISCUSSION

I. *Applicable law and standard of review*

"Code of Civil Procedure section 1281.2 provides in relevant part: 'On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists . . . .' '"[T]he right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract. [Citations.]" [Citation.] There is no public policy in favor of forcing arbitration of issues the parties have not agreed to arbitrate. . . . It follows that when presented with a petition to compel arbitration, the trial

4

court's first task is to determine whether the parties have in fact agreed to arbitrate the dispute. [¶] We apply general California contract law to determine whether the parties formed a valid agreement to arbitrate.' [Citation.]" (*Gorlach v. Sports Club Co.* (2012) 209 Cal.App.4th 1497, 1504–1505.)

An order denying a petition to compel arbitration is appealable. (Code Civ. Proc., § 1294, subd. (a).) Some courts have held that an order denying arbitration is reviewed for abuse of discretion. (See *Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 484.) Other courts have held, as the parties here urge, that we review the trial court's order for substantial evidence. (See, e.g., *Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1406.) Under either standard of review, we affirm the trial court's order.

II. *The trial court properly denied arbitration*

The trial court properly denied appellants' motion to compel arbitration for the simple reason that there was no written agreement to arbitrate a controversy. (*Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 360 [while there may be evidence that the parties orally agreed to certain terms, "there is *no* evidence of *any agreement*, oral or otherwise, to *arbitrate* any disputes related to whatever oral agreement . . . the parties did make"].)

In urging us to reverse, appellants argue that the parties' prior agreement to arbitrate is evidence that they must have agreed to arbitration here. But, there is evidence that the prior agreement was never finalized or signed, and, in fact, that project had been abandoned by the parties. Thus, the cases cited by appellants are inapposite. As for appellants' suggestion that respondents knew that an agreement to arbitrate was a condition of the business relationship, there is no such evidence here. While arbitration agreements may be pervasive in feature film production deals, the evidence here shows

5

that the parties never discussed arbitration and never anticipated that arbitration was a condition of the continued business relationship.[2]

Appellants further argue that "the parties always intended for any development/production deal to be documented in writing." "Thus, when [r]espondents received the [draft long-form agreement] in March 2011, they would have understood it as an attempt to document in writing the deal negotiated in 2010." Again, we agree that it appears that the parties intended to memorialize in writing the terms of their oral agreement. The draft long-form agreement may have been an attempt to do so; but, respondents objected to many of the terms and expressly reserved the right to object to other terms. And, in any event, the draft long-form agreement indicated that it was not final until executed by the parties—it never was.

The parties dispute whether the draft long-form agreement could have become binding without their signatures. Citing *Banner Entertainment, Inc. v. Superior Court*, *supra*, 62 Cal.App.4th at page 361, appellants contend that the lack of signatures was not fatal because "it is not the presence or absence of a *signature* which is dispositive; it is the presence or absence of evidence of an *agreement* to arbitrate which matters." (*Ibid*.) Respondents disagree, also citing *Banner Entertainment, Inc. v. Superior Court*, *supra*, at page 358: "When it is clear, both from a provision that the proposed written contract would become operative *only* when signed by the parties as well as from any other evidence presented by the parties that both parties contemplated that acceptance of the contract's terms would be signified by signing it, the failure to sign the agreement means no binding contract was created." We need to resolve the question of whether the draft long-form agreement could have become binding without the parties' signatures. Substantial evidence confirms that there never was an agreement to arbitrate—the parties

---

[2]     It follows that we reject appellants' unfounded assertion that: "The evidence here supports that the parties agreed to arbitrate disputes when they negotiated [r]espondents' deal in 2010."

never discussed it, they never negotiated it, and they never agreed to it.[3] So, it is irrelevant whether they signed the draft long-form agreement, and it is irrelevant whether the parties intended that document to memorialize their oral agreement.

Finally, appellants contend that respondents worked on the film pursuant to the draft long-form agreement. Substantial evidence indicates otherwise. The parties began working on the film as soon as the oral agreement was reached in February 2010; they continued working on the project for a couple of years, even while the draft long-form agreement was circulated between attorneys. But that does not compel the conclusion that once the draft long-form agreement was prepared, the parties were no longer working according to the terms of the oral agreement, but had adopted the terms of the proposed written contract.

## DISPOSITION

The order is affirmed. Respondents are awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, Acting P. J.
               ASHMANN-GERST

We concur:


_____, J.
      CHAVEZ


_____, J.*
      FERNS

---

[3]    For the same reasons, we reject appellants' contention that even if the draft long-form agreement is unenforceable because it was never signed, then the arbitration provision is separately enforceable. The arbitration provision was never negotiated or agreed to; thus, it cannot be enforced.

*    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.